DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Gabriel Burgos, Jr. has appealed from one of his convictions in the Lorain County Court of Common Pleas. This Court affirms.
 I {¶ 2} On May 12, 2005, Defendant-Appellant Gabriel Burgos, Jr. was indicted on one count of burglary in violation of R.C.2911.12(A)(3); one count of felonious assault, in violation of R.C. 2903.11(A)(2); one count of kidnapping, in violation of R.C.2905.01(B)(1)/2905.01(B)(2); and one count of theft, in violation of R.C. 2913.02(A)(1). Appellant waived reading of the indictment and entered not guilty pleas to all charges in the indictment.
 {¶ 3} A jury trial commenced on August 22, 2005. On August 23, 2005 the jury returned its verdict and found Appellant guilty of burglary and theft, but not guilty of kidnapping and felonious assault.
 {¶ 4} Appellant has appealed his burglary conviction, asserting four assignments of error.[1] Appellant's first and second assignments of error have been consolidated.
 II Assignment of Error Number One
"THE CONVICTION FOR BURGLARY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THEREBY DENYING DEFENDANT A FAIR AND JUST TRIAL GUARANTEED BY THE DUE PROCESS CLAUSE IN ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND IN VIOLATION OF ARTICLE IV, SECTION 3, OF THE OHIO CONSTITUTION."
 Assignment of Error Number Two
"MR. BURGOS' BURGLARY CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE WHEN THE STATE FAILED TO PRESENT ALL ELEMENTS OF THE THIRD DEGREE FELONY BURGLARY [SIC] OFFER EVIDENCE OF THE PRESENCE OR LIKELY PRESENCE OF SOMEONE OTHER THAN AN ACCOMPLICE AND TO ESTABLISH THAT THE PLACE MET THE REQUIREMENTS OF `AN OCCUPIED STRUCTURE.'"
 {¶ 5} In his first and second assignments of error, Appellant has argued that his conviction of burglary was against the manifest weight of the evidence and based on insufficient evidence. Specifically, Appellant has argued that the testimony of the State's witnesses did not establish that he burglarized an occupied structure and therefore, the State did not prove all of the necessary elements of burglary. We disagree.
 {¶ 6} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
 {¶ 7} In State v. Roberts, this Court explained:
"[S]ufficiency is required to take a case to the jury. * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. (Emphasis omitted).
 {¶ 8} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 9} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other. Thompkins,78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court.Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 10} Appellant was convicted of burglary. Pursuant to R.C.2911.12(A)(3):
"No person, by force, stealth, or deception, shall * * * [t]resspass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense[.]"
The only element of burglary challenged by Appellant is the "occupied structure" element. He has argued that his Crim.R. 29 motions should have been granted because the State failed to show he trespassed in an "occupied structure[.]" R.C. 2909.01(C) defines occupied structure as:
"[A]ny house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:
"(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.
"* * *
"(4) At the time, any person is present or likely to be present in it."
The trial court's jury instruction on "occupied" mirrored R.C. 290901(C). The trial court instructed the jury, saying: "`Occupied structure' means any house, building, or other structure, or any portion thereof, which is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied, and whether or not any person is actually present, or, in the alternative, in which at the time any person is present or likely to be present."
 {¶ 11} During the trial, Patricia Jean Anderson ("Anderson") testified to the following.[2] Anderson lived at 3194 East River Avenue ("River house") until 2000 when she moved in with her father due to his ailing health. Anderson kept clothes, furniture, and bathroom necessities at the River house. She would go to the River house twice a week or more, but sometimes did not go every week. Anderson's uncles and other relatives would also go to the River house. The River house was secured with locks.
 {¶ 12} Anderson testified that on March 17, 2005, she was driving by and noticed an unfamiliar truck by the house. She stopped her car and noticed a door to the house that should have been locked was open. Anderson saw Appellant and confronted him.
 {¶ 13} Anderson testified to the following on cross-examination. Her "legal address" since 2003 is 4564 Day Street. The River house remains in probate from her father's death. Anderson testified that no one lives at the River house; she "just went back and forth."
 {¶ 14} Anderson testified on re-direct that when she said in the police report that the River house was unoccupied she meant that no one spends the night there; she testified that she was not using the "legal" definition of occupied.
 {¶ 15} Bertha Edreff, Anderson's neighbor at the River house testified that she would see Anderson about twice a week and that Anderson maintained the lawn at the River house.
 {¶ 16} John Leslie Scarbro ("Scarbro"), Appellant's co-defendant, testified to the following. Scarbro was currently incarcerated at Lorain Correctional Institution for the crimes he committed against Anderson. He pled guilty to burglary, theft, kidnapping, and felonious assault against Anderson and received a sentence of three years incarceration. Scarbro testified that he first noticed the River house when he and Appellant were obtaining scrap metal from Anderson's neighbor. Scarbro and Appellant went to the door of the River house and knocked to see if anyone there had scrap metal. No one answered the door. They both knew they were not allowed to take anything from the River house's back yard or to enter the River house. On March 17, 2005, while driving to work, Appellant pulled into the driveway at the River house. Appellant then put gloves on and cut off one of the locks. They started going through "stuff" and Anderson arrived. Scarbro testified that there were "lots" of items in the house. Scarbro admitted a criminal history of forgery, theft and having a weapon under disability.
 {¶ 17} Scarbro testified to the following on cross-examination. The pair didn't take anything from inside the house; they took items from the shed in the back. Appellant and Scarbro knew no one was living in the house, specifically that it was not occupied. Scarbro testified that he received a lesser sentence for testifying against Appellant.
 {¶ 18} Lieutenant Ron Trifiletti of the Sheffield Village Police Department testified to the following. He responded to a call regarding Anderson and she informed him that she had confronted two individuals at her River house residence. Lt. Trifiletti identified a picture showing the back of the River house with a lock cut off the door. He also identified a picture showing a jewelry box and dresser with the drawers pulled out.
 {¶ 19} After the admission of several exhibits, the State rested its case. Appellant made a Crim.R. 29 motion and the trial court denied the motion. Appellant then rested his case without presenting any witnesses or evidence. Appellant renewed his Crim.R. 29 and the trial court again denied the motion.
 {¶ 20} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the jury clearly lost its way when it found Appellant guilty of burglary. The record contained evidence from which the jury could have found that Appellant trespassed in an occupied structure to commit a theft offense. The jury was in the best position to evaluate the credibility of witnesses and give proper weight to their testimony. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. "[I]n reaching its verdict, the jury is free to believe, all, part, or none of the testimony of each witness." Prince v. Jordan, 9th Dist. No. 04CA008423,2004-Ohio-7184, at ¶ 35, citing State v. Jackson (1993),86 Ohio App.3d 29, 33. As the factfinder, the jury was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. See DeHass, supra.
 {¶ 21} We are not persuaded by Appellant's argument that the evidence failed to show he trespassed in an "occupied" structure. The fact that Anderson was not living at the River house at the time of the burglary is irrelevant to establishing the element of an "occupied" structure. The relevant question in determining if a structure is "occupied" concerns the residential purpose of the dwelling, rather than the presence or absence of an occupant. SeeState v. McLemore (Aug. 30, 1995), 9th Dist. No. 95CA006037 (finding that the vacant lower portion of duplex was still an "occupied" structure because it was secured and maintained as a dwelling); see also, State v. Green (1984), 18 Ohio App.3d 69
(finding that a home left vacant after the owners moved to another residence was still an "occupied" structure because it was being maintained as a dwelling). Appellant is not the first defendant to raise the unsuccessful argument that a dwelling is not an "occupied" structure if someone is not living there. See Id.; see, also, State v. Merriweather (May 13, 1998), 9th Dist. No. 97CA006693 (finding that an apartment maintained by the police as a surveillance post was an "occupied" structure).
 {¶ 22} We find the legislative intent of "occupied" structure evident from the Committee Comment to R.C. 2909.01. Said Committee Comment states in pertinent part that under R.C.2909.01(C)(1) "all dwellings are classed as occupied structures, regardless of the actual presence of any person. Whether or not the dwelling is used as a permanent or temporary home is immaterial, so long as it is maintained for that purpose."
 {¶ 23} We find that the trial testimony established that the River house was a dwelling maintained as a residential home. Thus it was an "occupied" structure. The testimony showed that Anderson maintained the River house as a residential dwelling both inside and outside the house. The home contained furnishings and was available for overnight guests. Anderson testified that she still had belongings there and Lt. Trifiletti testified that the bedroom contained a jewelry box and dresser. Moreover, Scarbro testified that the house was full of items.
 {¶ 24} We find Anderson and Scarbro's testimony regarding whether the River house was "occupied" or unoccupied simply a reflection of their opinions, not determinative of the legal issue. Furthermore, the fact that Anderson's "legal" address was not the River house does not mean that the River house was not "occupied" for purposes of R.C. 2911.12. R.C. 2909.01 and the applicable case law do not require that a dwelling be one's legal address to be considered "occupied[.]" Furthermore, this Court finds Appellant's desired extension of the law to be unsupported.
 {¶ 25} Based on the foregoing, this Court cannot find that Appellant's burglary conviction was against the manifest weight of the evidence. Furthermore, as previously stated, "a determination that [a] conviction is supported by the weight of the evidence [is] also * * * dispositive of the issue of sufficiency." Roberts, supra at 4. Accordingly, having found that Appellant's burglary conviction was not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Thus, we find that the trial court did not err in denying Appellant's motion for acquittal. Appellant's first and second assignments of error are without merit.
 Assignment of Error Number Three
"THE COURT COMMIT [SIC] PLAIN ERROR WHEN IT FAILED TO ALLOW AMENDMENT OF THE INDICTMENT OR PROVIDE INSTRUCTIONS ON LESSER INCLUDED OFFENSES."
 {¶ 26} In his third assignment of error, Appellant has argued that the trial court erred in denying an amendment to the indictment or providing an instruction on a lesser included offense. Specifically, Appellant has argued that he should have received a jury instruction on the lesser included offense of burglary of the fourth degree and/or breaking and entering of the fifth degree. We disagree.
 {¶ 27} As a preliminary matter, we note that Appellant's brief appears to claim that any errors in jury instructions were preserved and that plain error applies. After a thorough review of the record, we find that Appellant did not preserve any errors regarding jury instructions. Appellant's failure to object to the jury instructions waives all challenges except plain error.State v. Skatzes, 104 Ohio St.3d 195, 2004-Ohio-6391, at ¶ 52, citing State v. Underwood (1983), 3 Ohio St.3d 12, syllabus.
 {¶ 28} Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings. State v. Tichon (1995),102 Ohio App.3d 758, 767. A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. State v. Bray, 9th Dist. No. 03CA008241, 2004-Ohio-1067, at ¶ 12. This Court may not reverse the judgment of the trial court on the basis of plain error, unless Appellant has established that the outcome of the trial clearly would have been different but for the alleged error.State v. Kobelka (Nov. 7, 2001), 9th Dist. No. 01CA007808, at 5, citing State v. Waddell (1996), 75 Ohio St.3d 163, 166.
 {¶ 29} Appellant has argued that plain error is established in the instant matter because the trial court failed to give a jury instruction on burglary in the fourth degree and/or a jury instruction on breaking and entering. The Ohio Supreme Court has stated that "an erroneous jury instruction does not constitute plain error, unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Cunningham,105 Ohio St.3d 197, 2004-Ohio-7007, at ¶ 56, citing State v.Underwood (1983), 3 Ohio St.3d 12, syllabus. Accordingly, we must review the record for plain error regarding jury instruction on those crimes.
 {¶ 30} Determining whether the lesser included offense instruction was warranted is a two-step process. First we must decide if the proposed lesser included offense is actually a lesser included offense of the charged offense, then we review whether it was appropriate in the instant matter. An offense is considered to be a lesser included offense of another if:
"(i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. State v. Deem (1988), 40 Ohio St.3d 205, 209.
Fourth Degree Felony Burglary
 {¶ 31} Based on the Deem test and our precedent we find that burglary under R.C. 2911.12(A)(4) is a lesser included offense of burglary under R.C. 2911.12(A)(3). See State v.Stringer, 9th Dist. No. 04CA0032-M, 2004-Ohio-6543, at ¶¶ 2, 38-39. Accordingly, we must determine if the fourth degree felony burglary instruction was warranted in this case.
 {¶ 32} It is important to note that while a crime may constitute a lesser included offense, it does not follow that a lesser included offense instruction is mandatory; "[a]n instruction on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense." State v. Carter (2000),89 Ohio St.3d 593, 600. Moreover, the lesser included offense instruction is not warranted every time "some evidence" is presented to support the inferior offense. State v. Shane (1992), 63 Ohio St.3d 630,632. Rather, a court must find "sufficient evidence" to "allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense." (Emphasis sic.). Id. at 632-633. In making the determination of whether the instruction was required, the reviewing court must view the evidence in a light most favorable to the defendant. State v. Smith (2000), 89 Ohio St.3d 323,331.
 {¶ 33} Having reviewed the record and given the totality of the evidence, we cannot say that the jury could have reasonably acquitted Appellant of third degree felony burglary under R.C.2911.12(A)(3) and found him guilty of the lesser included offense of fourth degree felony burglary under R.C. 2911.12(A)(4). As discussed in Appellant's first and second assignments of error, the State proved all the necessary elements of R.C.2911.12(A)(3). Accordingly, the trial court did not commit plain error by failing to give a fourth degree felony burglary instruction.
Breaking and Entering
 {¶ 34} Appellant has also argued that it was plain error for the trial court not to give a breaking and entering instruction as a lesser included offense of burglary. We disagree.
 {¶ 35} As addressed in Appellant's first and second assignments of error, burglary requires trespass in an "occupied" structure. Breaking and entering on the other hand entails trespass in an "unoccupied" structure. Pursuant to R.C.2911.13(A), the breaking and entering statute: "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense [.]" As previously discussed, in order to constitute a lesser included offense, "the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed[.]" Deem, 40 Ohio St.3d at 209. It is clear to this Court that one can commit a burglary without committing a breaking and entering. Accordingly, breaking and entering is not a lesser included offense of burglary. See Statev. Parker (Apr. 19, 2000), 9th Dist. No. 98CA007216, at 7. Thus, Appellant was not entitled to the breaking and entering instruction and the trial court did not commit plain error by failing to instruct the jury on R.C. 2911.13(A).
 {¶ 36} Based on the foregoing, Appellant's third assignment of error lacks merit.
 Assignment of Error Number Four
"PROSECUTORIAL MISCONDUCT WAS SUCH THAT MR. BURGOS WOULD HAVE CONVICTED [SIC] OF A FELONY FOUR BURGLARY BUT FOR HER ACTIONS."
 {¶ 37} In his fourth assignment of error, Appellant has argued that prosecutorial misconduct lead to his conviction. Specifically, Appellant has argued that the prosecutor misstated several facts in opening and closing arguments that "may have influenced" the jury. We disagree.
 {¶ 38} When a defendant fails to object to alleged prosecutorial misconduct, he waives all but plain error. Statev. Smith, 97 Ohio St.3d 367, 2002-Ohio-6659, at ¶ 45. Appellant in the instant matter failed to object to the alleged improper statements made by the State its opening and closing arguments and therefore, Appellant has waived any claim but that of plain error. Id.
 {¶ 39} As previously discussed in Appellant's third assignment of error, the plain error doctrine requires an error that is so obvious that it should have been apparent to the trial court without an objection. Kobelka, supra. "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a reviewing court must determine if the remarks were improper, and, if so, whether they actually prejudiced the substantial rights of the defendant." State v.Overholt, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, at ¶ 47. Appellant must demonstrate that there is a reasonable probability, that, but for the prosecutor's misconduct, the result of the proceeding would have been different. Id.
 {¶ 40} In support of his prosecutorial misconduct argument, Appellant has listed a paragraph full of alleged acts of misconduct by the prosecutor. However, Appellant has failed to connect said allegations to any probability of a different result had the statements not been made. Instead, Appellant has argued that the "jury may have been influenced by several misstatements of the facts by the prosecutor during opening and closing statements." We find that Appellant has failed in his burden.
 {¶ 41} Assuming arguendo, that any statements by the prosecutor were improper and constituted misconduct, there is no evidence before this Court that the outcome of the trial would have been different had the statements not been made. The record shows that while the jury heard opening and closing statements by the State, it also heard the evidence presented by the trial testimony and the trial court instructed the jury that statements by the attorneys were not to be considered as evidence or testimony. We presume that the jury followed the trial court's instructions when deliberating in this matter. See State v.Downing, 9th Dist. No. 22012, 2004-Ohio-5952, at ¶ 51. Moreover, given that Appellant has failed to present any evidence or argument that the result of the trial would have been different, but for, the prosecutor's statements, we find that plain error regarding prosecutorial misconduct did not lead to Appellant's conviction.
 {¶ 42} Appellant's fourth assignment of error lacks merit.
 III {¶ 43} Appellant's four assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Moore, J. Boyle, J. concur.
[1] Appellant has not appealed from the misdemeanor theft offense; therefore, this appeal will only address his burglary conviction.
[2] As previously mentioned, Appellant has not appealed his theft conviction. Accordingly, we will only reiterate the testimony relating to the burglary conviction, with theft as the criminal offense in the "structure [.]"