DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant/Defendant appeals from his conviction for murder and felonious assault in the Summit County Court of Common Pleas. We affirm.
 {¶ 2} Defendant was indicted on August 22, 2005, on one count of murder, in violation of R.C. 2903.02(A), a special felony; one count of felonious assault, in violation of R.C. 2903.11(A)(1), a second degree felony; and one count of murder, in violation of R.C. 2903.02(B), a special felony, for the death of Michael Burns following an altercation outside a bar on Kenmore Blvd., in Akron, Ohio. The first count was later dismissed. Defendant was tried before a jury on February 6, 2006, on the remaining two counts. ("Trial One"). The jury convicted *Page 2 
Defendant of the felonious assault charge, but was deadlocked as to the murder charge. The trial court declared a hung jury and a new trial date was set for May 1, 2006, which date was later continued to May 16, 2006. The trial court held sentencing on the felonious assault conviction in abeyance pending trial of the murder charge.
 {¶ 3} On May 16, 2006, Defendant was tried before a jury on the murder charge and was convicted on May 23, 2006 ("Trial Two"). Defendant was sentenced on June 8, 2006, to a term of 15 years to life on the murder conviction and seven years on the felonious assault conviction, to be served concurrently.
 {¶ 4} Defendant timely appealed his convictions, raising five assignments of error.
 Assignment of Error 1: "[Defendant] was deprived of a fair trial by the admission of repetitive and cumulative gruesome photographs of the crime scene and of Burns's autopsy, meriting reversal."
 {¶ 5} Defendant asserts that he was deprived of a fair trial when the trial court permitted 27 photographs, taken during the decedent's hospitalization and autopsy, and 15 other photographs, taken at the scene of the crime, to be shown to the jury. Defendant asserts that the photographs were cumulative evidence that unfairly prejudiced the jury as to the brutally violent nature of the attack. Defendant specifically points this Court's attention to State's Exhibits 37, 42 and 58 as being cumulative. Defendant acknowledged that his trial counsel failed to *Page 3 
object to the admission of all of the photographs and asks this Court to review this matter for plain error. Defense counsel made a general objection to the cumulative nature of the photographs at the end of the case, prior to jury deliberations, but failed to specifically object to any admitted photograph during the trial.
 {¶ 6} The State acknowledges that this Court's standard of review would be plain error absent proper objection by defense counsel; however, without citing a case that so holds, the State asserts that Defendant cannot demonstrate plain error because concurrent sentences were imposed. The State asserts this argument in response to each of Defendant's assignments of error. We will only address the argument once in our discussion of this assignment of error.
 {¶ 7} This Court has held that "plain error does not exist when concurrent sentences are imposed for crimes that constitute allied offenses of similar import." State v. Iacona (Mar. 15, 2000), 9th Dist. No. CA2891-M, at *22, citing State v. Martin (Feb. 9, 1999), 9th Dist. No. 18715, at 5; State v. Blondheim (May 27, 1998), 9th Dist. No. 18594;State v. Combs (Dec. 4, 1991), 9th Dist. No. 15025. "The determination of whether two offenses are of similar import is limited to an objective analysis of the statutory provisions at issue to determine whether the elements of the charged offenses `correspond to such a degree that the commission of one crime will result in the commission of the other.'"Iacona, at *23, quoting State v. Blankenship (1988), 38 Ohio St.3d 116,117. Felony murder and felonious assault are not allied offenses of similar import. State v. Jones, 2nd Dist. *Page 4 
No. 21522, 2007-Ohio-1035, at ¶ 18. This is so because one can commit a felony murder without committing felonious assault or vice versa. Id. Based on the foregoing, Defendant is not barred from attempting to establish plain error.
 {¶ 8} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Supreme Court has repeatedly admonished that this exception to the general rule is to be invoked reluctantly. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. In order for this court to apply Crim.R. 52(B), it must be clear that the outcome of the trial would have been different but for the alleged error. See State v. Lane (1995),108 Ohio App.3d 477, 482, appeal dismissed (1996), 75 Ohio St.3d 1494.
 {¶ 9} At the close of the State's case, the prosecutor moved to admit State's Exhibits 5-52, which included crime scene and autopsy photographs. Defense counsel objected to Exhibits 13 and 17 and the trial court excluded them. Defense counsel failed to specifically object to the admission of any of the remaining photos, and has therefore waived all but plain error. See State v. Monroe, 105 Ohio St.3d 384,2005-Ohio-2282, at ¶ 25, citing State v. Williams (1977),51 Ohio St.2d 112, paragraph one of the syllabus. *Page 5 
 {¶ 10} Defendant specifically points our attention to State's Exhibits 37, 42 and 58 as being cumulative and repetitive. Each of these exhibits was brought into evidence through the coroner. Dr. Dean testified that Exhibit 37 was a picture of the victim's face from the lips down showing the splits on the lips. Exhibit 42 was a picture of the right side of the victim's right eye with the skin pulled down to show the depth of the cuts. Exhibit 58 was a picture of the victim's upper lip being pulled out (at a different angle than other pictures) to show the bruising of the lips. Our review of Dr. Dean's testimony as to all of the pictures does not indicate that these pictures were repetitive of any others. Each of the pictures of the victim's lips, mouth and eyes was from a different angle or perspective.
 {¶ 11} Thus, based on our review of the photographs at issue, we hold that there was no plain error in admitting them. In addition to demonstrating the cause of the victim's death, the photos were relevant and helped to prove the Defendant's intent, as well as the lack of accident or mistake. The photos further "illustrated the testimony of the detectives who described the crime scene and the coroner [and paramedic] who described the wounds and injuries sustained" by Mr. Burns. Monroe at ¶ 26. The photos gave the jury an "`appreciation of the nature and circumstances of the crimes.'" Id., quoting State v.Evans (1992), 63 Ohio St.3d 231, 251. "Moreover, reversal is not required merely because a large number of photos were admitted."Monroe at ¶ 26, citing State v. Smith, 97 Ohio St.3d 367,2002-Ohio-6659, at ¶ 35. *Page 6 
 {¶ 12} The trial court reviewed all the photographs submitted by the state and excluded particular photographs after objection by defense counsel. "In so doing, the trial court exercised its discretion in admitting the photos." Monroe at ¶ 27; see, e.g., State v. Davie (1997),80 Ohio St.3d 311, 318; State v. Franklin, 97 Ohio St.3d 1,2002-Ohio-5304, at ¶ 23. We find no outcome-determinative plain error in the admission of these photos.
 {¶ 13} Defendant's first assignment of error is overruled.
 Assignment of Error II "Prosecutorial misconduct deprived [Defendant] of a fair trial, meriting reversal."
 {¶ 14} In his second assignment of error, Defendant asserts that three instances of prosecutorial misconduct deprived him of fair trials in Trial One and Trial Two. Defendant asserts two instances of prosecutorial misconduct during Trial One: (1) the prosecutor created a racial divide during questioning of the jury pool during voir dire; and (2) the prosecutor repeatedly called Defendant a liar during closing argument. Defendant asserts one instance of prosecutorial misconduct during Trial Two, i.e., that the Prosecutor repeatedly implied during closing argument that Defendant had already been convicted for felonious assault in connection with Mr. Burns's death.
 {¶ 15} The State asserts that: (1) any comments related to race during voir dire were proper in the context utilized; (2) there was evidentiary support for the *Page 7 
fact that the Defendant lied; and (3) the Prosecutor did not imply that Defendant had been previously convicted of felonious assault for the death of Mr. Burns.
 {¶ 16} We will review this matter for plain error where there is no objection at trial. Defense counsel did not object to any of the alleged misconduct during the trials. As previously discussed, "the plain error doctrine requires an error that is so obvious that it should have been apparent to the trial court without an objection." State v. Burgos, 9th Dist. No. 05CA008808, 2006-Ohio-4305, at ¶ 39. "`In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a reviewing court must determine if the remarks were improper, and, if so, whether they actually prejudiced the substantial rights of the defendant.'" Id., quoting State v. Overholt, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, at ¶ 47. "Appellant must demonstrate that there is a reasonable probability, that, but for the prosecutor's misconduct, the result of the proceeding would have been different." Burgos at ¶ 39, citing Overholt at ¶ 47. Ohio law grants prosecutors wide latitude, finding that any prosecutorial misconduct therein must be considered in the light of the whole case. State v. Maurer (1984), 15 Ohio St.3d 239,266. It is well settled that the conduct of a prosecutor during trial "cannot be made a ground of error unless that conduct deprives the defendant of a fair trial." State v. Papp (1978), 64 Ohio App.2d 203,211; State v. DeNicola (1955), 163 Ohio St. 140, 148; Scott v.State (1923), 107 Ohio St. 475, 491. *Page 8 
 {¶ 17} Here, Defendant has cited the alleged acts of misconduct by the prosecutor, but has failed to connect his allegations to "any probability of a different result had the statements not been made."Burgos at ¶ 40.
 {¶ 18} As to the first instance of alleged misconduct, Defendant argues that the racial comment during voir dire "invites the jurors to divide the black and white Americans in the courtroom and associate themby race with either the accused or the State." (Emphasis sic). As to the comments by the State during closing argument in Trial One that the Defendant is a liar, Defendant asserts such statements are prejudicial because they "attempt to shift the burden of proof from the State to the accused; and * * * insinuate[s] the prosecutor's own beliefs about the accused's guilt or innocence into the jury process."
 {¶ 19} With each of the above alleged instances of misconduct, the record shows that while the jury heard opening and closing statements by the State, it also heard the evidence presented by the trial testimony and the trial court instructed the jury that statements by the attorneys were not to be considered as evidence or testimony. We presume that the jury followed the trial court's instructions when deliberating in this matter. State v. Downing, 9th Dist. No. 22012, 2004-Ohio-5952, at ¶ 51. Moreover, given that Appellant has failed to present any evidence or argument that the result of the trial would have been different but for the prosecutor's statements, we find that any alleged error regarding prosecutorial *Page 9 
misconduct asserted with regard to the two instances at Trial One did not lead to Defendant's conviction.
 {¶ 20} The final alleged instance of misconduct occurred during Trial Two. Here, Defendant asserts that during opening statement, the State implied that Defendant had already been tried and convicted for felonious assault by giving (or attempting to give) his recitation of the law as to felonious assault, substantial harm and self-defense. Defendant asserts that the implication was made as set forth on pages 299-302 and 326 of the Trial Two transcript. In this instance, Defendant objected to the prosecutor's statements. A sidebar was held and a cautionary instruction given to the jury that only the court would instruct them on the law. Defense counsel asserted his continuing objection.
 {¶ 21} We find that these remarks did not prejudicially affect Defendant's substantial rights. State v. Jackson, 107 Ohio St.3d 300,2006-Ohio-1, at ¶ 142, citing State v. Smith (1984), 14 Ohio St.3d 13,14. To the extent that the prosecutor's recitation of the law of felonious assault, substantial harm, and self-defense was improper, the trial court gave a curative instruction to the jury that only the court would provide them with the law they were to follow. As noted inDowning, it is presumed the jury followed the trial court's instructions and Defendant has provided this Court with no evidence that they did not and/or that the outcome would have been different but for the Prosecutor's remarks.
 {¶ 22} Defendant's second assignment of error is overruled. *Page 10 
 Assignment of Error III "Jury misconduct deprived [Defendant] of a fair trial, meriting reversal."
 {¶ 23} Defendant asserts that he was deprived of a fair trial when the jury utilized a Black's Law Dictionary left in the jury room to look up definitions of certain words during deliberations in Trial One. Specifically, the jurors looked up the words "knowingly," "preponderance," and "inference." At least one juror indicated he looked up the word "intent" to distinguish it from "motive" before deliberations began. Another juror attempted to find a definition for "acute," but could not find it. A final juror indicated they looked up a word beginning with the letter "H," but could not remember it. Defendant asserts that the trial court should have declared a mistrial because juror misconduct is presumed and the State did not rebut that presumption.
 {¶ 24} The State asserts that any error related to this issue was waived. The trial court learned of the problem after the jury had retired to deliberation. The trial court conducted voir dire of each member of the jury and each juror indicated that he (or she) had not read or heard anything that would affect his deliberations. Counsel was also permitted to question the jurors. At the conclusion of the voir dire, the State suggested that no harm had occurred and the jury should be instructed to ignore anything they had learned from the dictionary. Defense counsel agreed with the State's suggestion and the trial court gave a curative *Page 11 
instruction satisfactory to both the State and defense counsel. We agree with the State that Defendant has waived his right to assert this error on appeal.
 {¶ 25} "`It is well established that [t]he trial judge is in the best position to determine the nature of the alleged jury misconduct and the appropriate remedies for any demonstrated misconduct.'" State v.Watkins, 9th Dist. No. 23133, 23145, 2006-Ohio-6380, at ¶ 8, quotingState v. McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, at ¶ 184. A trial court has considerable discretion in deciding how to handle an issue of alleged juror misconduct. "The Ohio Supreme Court has found, as here, that where the defense did not expressly request the alleged juror misconduct to be remedied at trial or express some form of dissatisfaction with the way the trial court handled the matter, in the absence of plain error, the claim is waived." Watkins at ¶ 99, citingMcKnight at ¶ 185; State v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus.
 {¶ 26} The trial court conducted an extensive voir dire of each juror individually and in the presence of all counsel. Counsel was permitted to ask the jurors questions although defense counsel declined to do so. At the conclusion of the voir dire, the State proposed that a curative instruction be given to the jurors and defense counsel agreed. The following instruction was given:
 {¶ 27} The Court:
 "The Court has now interviewed each one of the jurors.
 "I'm pretty clear you have an idea you shouldn't have been looking in the Black's Law Dictionary at this point. *Page 12 
 * * *
 "I will tell you that based on discussions with both attorneys they believe that we can go on.
 "I'm going to instruct you a couple of ways.
 "One, obviously you can no longer look in the book. I'm going to take the book.
 "Don't look — so I can be crystal clear, the only thing that you can consider are the jury instructions the Court has given you and the evidence that's been provided that you have.
 "A couple of you indicated that there aren't copies for everyone, we'll make sure everyone tomorrow has a copy of the jury charge. That will, maybe, help alleviate it.
 "You are not to consider for any purpose anything you read in the Black's Law Dictionary.
 "You can only consider the evidence that's been presented and the instructions the Court has given you.
 "I want to just make sure from the — from both attorneys, is there anything else you wish me to say to the jury?"
 Mr. LoPrinzi: "No, Judge."
 * * *
 Mr. Madison: "No, ma'am."
 {¶ 28} We find no plain error. As stated above, a trial court has considerable discretion in determining how to handle an issue of juror misconduct and defense counsel agreed with how the trial court handled the matter. See McKnight at ¶ 184. Moreover, there is no evidence that the jury was not able to deliberate having looked up a few words in Black's dictionary and where the jury instructions provided the actual definitions. The jurors all indicated they could *Page 13 
continue to deliberate without considering the Black's dictionary definitions and all trial counsel agreed that the trial could continue. Without evidence that the jury relied upon the definitions set forth in the dictionary as opposed to those set forth in the jury instructions, we cannot say the trial court's failure to sua sponte declare a mistrial constituted plain error.
 {¶ 29} Finally, we disagree with Defendant's assertion that the trial court should have declared mistrial. Defendant has pointed this Court to no law in support of his proposition that the trial court is required to sua sponte declare a mistrial where there is juror misconduct. Moreover, "[a] fundamental rule of appellate review is that a reviewing court will not consider as error any issue that a party was aware of but failed to bring to the trial court's attention." State v. Helms (Mar. 24, 1999), 9th Dist. No. 18940, at *6, citing Schade v. Carnegie Body Co. (1982),70 Ohio St.2d 207, 210. Here, the record clearly indicates that Defendant did not move the trial court for a mistrial or suggest to the Court that it sua sponte grant such motion. Defense counsel agreed with and approved of the manner in which the trial court handled the issue.
 {¶ 30} Defendant's third assignment of error is overruled.
 Assignment of Error IV "[Defendant's] Sixth Amendment right to a fair trial was violated when victim-impact testimony was permitted during both [Defendant's] first trial and second trial."
 {¶ 31} In his fourth assignment of error, Defendant asserts that the State improperly permitted Mr. Burns's sister (Cheryl Burns) to testify as to the impact of Mr. Burns's death on the family after showing State's Exhibit 32, a photograph of Mr. Burns, after treatment by the paramedic. Cheryl Burns's testimony was unrelated to the cause of her brother's death. Ms. Burns testified during both trials. Moreover, Mr. Burns's driver's license, a personal and private item, was admitted into evidence through Ms. Burns. Defendant concedes that no objection was made at trial related to these alleged errors and that this Court should review the assignment for plain error.
 {¶ 32} The State asserts that Ohio law supports the proposition that the circumstances of a victim are relevant to the crime, including the circumstances of the commission of the murder, and the impact on the family may be admissible during the guilt phase. State v.Fautenberry (1995), 72 Ohio St.3d 435, 439-40. The State also points this Court to its decision in State v. Wilson (April 2, 1997), 9th Dist. No. 96CA006412, which states that when a defendant questions a witness concerning testimony allegedly offered in error, any objection on appeal is waived. Defense counsel cross-examined Ms. Burns and evidence outside of the impact of the death on the victim's family was garnered. Finally, the State asserts that the driver's license picture was utilized simply as a picture of the victim before the crime. *Page 15 
 {¶ 33} We begin by noting that defense counsel did not object to Ms. Burns's testimony and thus waived all but plain error. Defendant has failed to present any evidence or argument that the result of the trial would have been different but for the testimony of Ms. Burns.
 {¶ 34} Generally, "[evidence relating to the facts attendant to the offense is `clearly admissible' during the guilt phase, even though it might be characterized as victim-impact evidence." McKnight at ¶ 98, quoting Fautenberry, 72 Ohio St.3d at 440. The photograph shown to Ms. Burns in Trial One was introduced through the paramedic and the coroner and admitted into evidence, without specific objection, to show the condition of Mr. Burns immediately after treatment by the paramedics. Thus, the only testimony at issue is set forth in two or three pages of the transcripts. In those pages, Ms. Burns identifies the family members present in the courtroom and briefly describes the impact of Mr. Burns's death on the family and identifies Mr. Burns's driver's license. Given the 10 volume transcript, and testimony of more than 25 witnesses, it would be impossible for defense counsel to produce any evidence that but for Ms. Burns's brief testimony as to the impact of her brother's murder on the family and/or the admission of Mr. Burns's driver's license photograph, the Defendant would not have been convicted, and Defendant has not done so.
 {¶ 35} Defendant's fourth assignment of error is overruled. *Page 16 
 Assignment of Error V "[Defendant's] Sixth Amendment Right to Counsel was violated in that his trial counsel was ineffective."
 {¶ 36} In his last assignment of error, Defendant asserts the following errors by trial counsel, which he believes to be ineffective assistance of counsel: (1) counsel failed to object to hearsay evidence during the first trial; (2) counsel failed to object to the introduction of numerous repetitive and gruesome photographs, which unfairly prejudiced Defendant; (3) counsel failed to object or objected improperly to opinion testimony from an unqualified lay witness during the first trial; (4) counsel failed to object to prejudicial comments by the State and failed to move for a mistrial; (5) counsel failed to object to victim-impact testimony of Mr. Burns's family members; (6) counsel failed to move for a mistrial based on juror misconduct; (7) counsel failed to follow a consistent affirmative defense theory; and (8) counsel moved to dismiss the murder charge without citing this Court's holding in State v. Smathers (Dec. 20, 2000), 9th Dist. No. 19945. Defendant asserts that each of these errors is alone sufficient to establish ineffective assistance of counsel and/or establishes same under the doctrine of cumulative error.
 {¶ 37} The State asserts that Defendant fails to cite legal authority or facts in the record to establish his claim as to errors four, six, and seven. As to Defendant's eighth cited error, Smathers supports the trial court's denial of the motion to dismiss. Therefore, failure to include argument related thereto cannot *Page 17 
constitute ineffective assistance of counsel. It is a trial tactic as to whether or not to object to particular evidence (one, two, three, and five) and strategy cannot form the basis for a claim for ineffective assistance.
 {¶ 38} To prevail on a claim of ineffective assistance of counsel, Appellant must meet the two-prong test established in Strickland v.Washington (1984), 466 U.S. 668, 687. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
 {¶ 39} The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy. State v. Smith (1985),17 Ohio St.3d 98, 100. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." State v. DeNardis (Dec. 29, 1993), 9th Dist. No. 2245, at *2, citing Strickland, 466 U.S. at 689. Furthermore, an attorney properly licensed in Ohio is presumed competent. State v. Lott (1990),51 Ohio St.3d 160, 174. *Page 18 
 {¶ 40} In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. Further, an appellate court need not analyze both prongs of the Strickland test if it finds that Appellant failed to prove either.State v. Ray, 9th Dist. No. 22459, 2005-Ohio-4941, at ¶ 10.
1. Errors Four, Six, and Seven.
 {¶ 41} We begin by noting that an appellant has the burden on appeal. See App.R. 16(A)(7); Loc.R. 7(B)(7). "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3. See also, App.R. 16(A)(7); Loc.R. 7(B)(7). Pursuant to App.R. 16(A), an appellant's brief shall include the following:
 "(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."
See, also, Loc.R. 7(B)(7). In addition to reflecting the requirements specified in App.R. 16(A)(7), Loc.R. 7(B)(7) provides that "[e]ach assignment of error shall be separately discussed and shall include the standard of review applicable to that assignment of error[.]" *Page 19 
 {¶ 42} "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal."Kremer v. Cox (1996), 114 Ohio App.3d 41, 60. Moreover, it is not the duty of this Court to develop an argument in support of an assignment of error if one exists. Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at *8. As we have previously held, we will not guess at undeveloped claims on appeal. See McPherson v. Goodyear Tire RubberCo., 9th Dist. No. 21499, 2003-Ohio-7190, at ¶ 31, citing Elyria JointVenture v. Boardwalk Fries, Inc. (Jan. 3, 2001), 9th Dist. No. 99CA007336.
 {¶ 43} As to Defendant's fourth alleged error, Defendant merely states that, "trial counsel failed to object to prejudicial comments by the State, and failed to move for a mistrial," without any citation to the record. As to Defendant's seventh alleged error, Defendant merely states that "counsel failed to follow a consistent affirmative defense theory," with a citation to the transcripts from both trials as "T1 and T2passim" (Emphasis sic). As to Defendant's sixth alleged error, Defendant merely states that "trial counsel failed to move for a mistrial on the grounds of juror misconduct," without citation to the record. Defendant does not provide any specific citation to the record, law or argument related to any of these alleged errors and it is not this Court's duty to scour the record for evidence to support Defendant's claims. Although we can presume that the juror misconduct *Page 20 
referenced in Defendant's sixth alleged error is the same misconduct at issue in Defendant's third assignment of error, it is still Defendant's responsibility to point this Court to the exact portions of the record he believed constituted ineffective assistance of counsel. Defendant has not met his burden on appeal.
 {¶ 44} Moreover, it is well-established that debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 49. The decision as to whether to move for a mistrial is trial strategy. See State v.Fitzgerald, 9th Dist. No. 23072, 2007-Ohio-701, at ¶ 39; State v.Pryor (Feb. 11, 1981), 5th Dist. No. 5297, at *1, citingClayton, 62 Ohio St.2d at 49. Moreover, defense counsel participated in a voir dire of the jury regarding the alleged misconduct and then indicated that the trial could continue if a curative instruction was given and that the curative instruction was sufficient. This further demonstrates "the decision not to move for a mistrial was part of counsel's trial strategy." State v. Balwanz, 7th Dist. No. 02-BE-37,2004-Ohio-1534, at ¶ 68. "A reviewing court should refrain from second-guessing an attorney's trial strategy." Id., citing State v.Carter (1995), 72 Ohio St.3d 545, 558.
2. Errors One, Two, Three, and Five.
 {¶ 45} Defendant asserts that trial counsel's failure to object to (1) hearsay evidence; (2) repetitive and gruesome crime scene photographs; (3) the opinion *Page 22 
testimony from an unqualified lay witness; and (5) victim-impact testimony constituted ineffective assistance of counsel. We disagree.
 {¶ 46} "[T]his Court has consistently held that `trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel.'" State v.Bradford, 9th Dist. No. 22441, 2005-Ohio-5804, at ¶ 27, quotingState v. Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76.
 {¶ 47} Here, although Defendant cites particular portions of the record of Trial One, he only cites to Trial Two passim, which, as discussed above, is insufficient to meet Defendant's burden on appeal. Moreover, as to the particular portions of the record cited from Trial One, Defendant does not make any argument or provide any analysis as to why the testimony cited is hearsay. Accordingly, Defendant has not met his burden on appeal.
 {¶ 48} We have previously discussed the defense counsel's conduct related to the use and admissibility of the photographs and note again that defense counsel did generally object to particular photographs before the jury retired for deliberations, although his failure to object during the State's case-in-chief and/or to specifically object to particular photographs limited us to review of this issue only for plain error. That being said, however, based on our holding as to the admissibility of these photographs, we cannot say that defense counsel's conduct *Page 22 
constituted ineffective assistance of counsel, especially when Defendant has pointed this court to no law or analysis on this issue.
 {¶ 49} As to Defendant's assertion that trial counsel failed to object to opinion testimony from a lay witness, it is unclear from the portions of the record Defendant cites how Ms. Callas's or Ms. Danko's eyewitness testimony were improper opinion testimony. In the pages cited, Ms. Callas testifies as to what she sees on the bar's video surveillance tape. Ms. Danko testifies as to her opinion of whether the conduct of either Mr. Burns or Mr. Wharton was provoking. She only does so on redirect examination after she is asked questions on this issue by defense counsel on cross-examination. Defendant has cited no authority for his assertion that this testimony is improper opinion testimony and/or that defense counsel's failure to object to same constituted ineffective assistance of counsel. Neither has Defendant asserted how he was prejudiced by this testimony.
 {¶ 50} Finally, Defendant asserts that defense counsel's failure to object to the victim-impact evidence constituted ineffective assistance of counsel. Defendant cites to the testimony of the Burns family in the record. We previously discussed this issue in Defendant's fourth assignment of error. There, we determined that there was no plain error because, even if evidence was inadmissible, Defendant did not demonstrate that but for this evidence the results of the trial would have been different. This standard is essentially the second prong of the Strickland test. Defendant must show that he was prejudiced by the *Page 23 
alleged victim-impact testimony. Based on our discussion related to Defendant's fourth assignment of error, we find no such prejudice.
 {¶ 51} We find that trial counsel's failures to object were tactical decisions. Moreover, Defendant's bare assertions do not demonstrate that he was prejudiced by any failure to object or that defense counsel's failures were not sound trial strategy.
3. Error Eight.
 {¶ 52} Finally, Defendant asserts that his trial counsel was ineffective because he filed a motion to dismiss that failed to include this Court's decision in State v. Smathers (Dec. 20, 2000), 9th Dist. No. 19945. Defendant asserts that Smathers holds that R.C. 2903.02 is constitutional, even where felonious assault is the predicate felony. We agree with Defendant as to what Smathers holds. Because of this, we cannot find that, even if failure to cite Smathers was error, such failure prejudiced the Defendant. Defendant was convicted of a violation of R.C. 2903.02(B) with felonious assault as the predicate. Moreover, Defendant fails to provide us any law or analysis as to the impact ofSmathers on his case and how he was prejudiced by defense counsel's failure to include it. Defendant has failed to satisfy his burden on appeal and/or under Strickland as to alleged error eight.
 {¶ 53} Defendant's fifth assignment of error is overruled. *Page 24 
 {¶ 54} Each of Defendant's assignments of error is overruled and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 MOORE, J., DICKINSON, J., CONCUR *Page 1